SINGER *v.* UNITED STATES.

No. 42.  Argued November 18, 1964.—Decided March 1, 1965.

*Sidney Dorfman* argued the cause and filed a brief for petitioner.

*Beatrice Rosenberg* argued the cause for the United States.  With her on the brief were *Solicitor General Cox, Assistant Attorney General Miller* and *Sidney M. Glazer.*

Briefs of *amici curiae* were filed by *Victor Rabinowitz* and *Leonard Boudin* for Joni Rabinowitz, and by *Justin A. Stanley* for Nicholas Jacop Uselding.

Mr. Chief Justice Warren delivered the opinion of the Court.

Rule 23 (a) of the Federal Rules of Criminal Procedure provides:

"Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government."

Petitioner challenges the permissibility of this rule, arguing that the Constitution gives a defendant in a federal criminal case the right to waive a jury trial whenever he believes such action to be in his best interest, regardless of whether the prosecution and the court are willing to acquiesce in the waiver.

Petitioner was charged in a federal district court with 30 infractions of the mail fraud statute, 18 U. S. C. § 1341 (1958 ed.). The gist of the indictment was that he used the mails to dupe amateur songwriters into sending him money for the marketing of their songs. On the opening day of trial petitioner offered in writing to waive a trial by jury "[f]or the purpose of shortening the trial." [1] The trial court was willing to approve the waiver, but the Government refused to give its consent. Petitioner was subsequently convicted by a jury on 29 of the 30 counts and the Court of Appeals for the Ninth Circuit affirmed. We granted certiorari, 377 U. S. 903.

Petitioner's argument is that a defendant in a federal criminal case has not only an unconditional constitutional right, guaranteed by Art. III, § 2, and the Sixth Amendment, [2] to a trial by jury, but also a correlative right to

---

[1] R. 17.

[2] Art. III, § 2, of the United States Constitution provides:

"The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed."

The Sixth Amendment provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

have his case decided by a judge alone if he considers such a trial to be to his advantage. He claims that at common law the right to refuse a jury trial preceded the right to demand one, and that both before and at the time our Constitution was adopted criminal defendants in this country had the right to waive a jury trial. Although the Constitution does not in terms give defendants an option between different modes of trial, petitioner argues that the provisions relating to jury trial are for the protection of the accused. Petitioner further urges that since a defendant can waive other constitutional rights without the consent of the Government, he must necessarily have a similar right to waive a jury trial and that the Constitution's guarantee of a fair trial gives defendants the right to safeguard themselves against possible jury prejudice by insisting on a trial before a judge alone. Turning his attention to Rule 23 (a), petitioner claims that the Fifth, Sixth, Ninth, and Tenth Amendments are violated by placing conditions on the ability to waive trial by jury.

We have examined petitioner's arguments and find them to be without merit. We can find no evidence that the common law recognized that defendants had the right to choose between court and jury trial. Although instances of waiver of jury trial can be found in certain of the colonies prior to the adoption of the Constitution, they were isolated instances occurring pursuant to colonial "constitutions" or statutes and were clear departures from the common law. There is no indication that the colonists considered the ability to waive a jury trial to be of equal importance to the right to demand one. Having found that the Constitution neither confers nor recognizes a right of criminal defendants to have their cases tried before a judge alone, we also conclude that Rule 23 (a) sets forth a reasonable procedure governing attempted waivers of jury trials.

## I.

*English Common Law.* The origin of trial by jury in England is not altogether clear. At its inception it was an alternative to one of the older methods of proof—trial by compurgation, ordeal or battle. I Holdsworth, A History of English Law 326 (7th ed. 1956). Soon after the thirteenth century trial by jury had become the principal institution for criminal cases, Jenks, A Short History of English Law 52 (5th ed. 1938); yet, even after the older procedures of compurgation, ordeal and battle had passed into disuse, the defendant technically retained the right to be tried by one of them. Before a defendant could be subjected to jury trial his "consent" was required, but the Englishmen of the period had a concept of "consent" somewhat different from our own. The Statute of Westminster I, 1275, 3 Edw. 1, c. 12, which described defendants who refused to submit to jury trial as "refus[ing] to stand to the Common Law of the Land," marks the beginning of the horrendous practice known as *peine forte et dure* by which recalcitrant defendants were tortured until death or until they "consented" to a jury trial.

It is significant that defendants who refused to submit to a jury were not entitled to an alternative method of trial,[3] and it was only in 1772 that *peine forte et dure* was officially abolished in England. By a statute enacted in that year, 12 Geo. 3, c. 20, a defendant who stood mute when charged with a felony was deemed to have pleaded guilty. Not until 1827, long after the adoption of our Constitution, did England provide by statute, 7 & 8

---

[3] It appears that many hardy defendants were willing to be tortured to death rather than submit to a jury trial, not because of any inherent distrust of the jury system but because of their desire to avoid a conviction and thereby prevent forfeiture of their lands and the resultant hardships for their descendants. Cf. I Holdsworth, *supra,* at 326.

Geo. 4, c. 28, for the trial of those who stood mute. Even this statute did not give the defendant the right to plead his case before a judge alone, but merely provided that he would be subject to jury trial without his formal consent.

Thus, as late as 1827 the English common law gave criminal defendants no option as to the mode of trial. The closest the common law came to such a procedure was that of the "implied confession," described briefly in 2 Hawkins, Pleas of the Crown, c. 31 (6th ed. 1787), by which defendants accused of minor offenses did not explicitly admit their guilt but threw themselves on the King's mercy and expressed their willingness to submit to a small fine. Despite the "implied confession," the court heard evidence and could discharge the defendant if it found the evidence wanting. Griswold, The Historical Development of Waiver of Jury Trial in Criminal Cases, 20 Va. L. Rev. 655, 660 (1934). It cannot seriously be argued that this obscure and insignificant procedure, having no applicability to serious offenses, establishes the proposition that at common law defendants had the right to choose the method of trial in all criminal cases. On the contrary, "[b]y its intrinsic fairness as contrasted with older modes, and by the favor of the crown and the judges, [trial by jury] grew fast to be regarded as the one regular common-law mode of trial, always to be had when no other was fixed." Thayer, A Preliminary Treatise on Evidence at the Common Law 60 (1898).

*The Colonial Experience.* The colonies which most freely permitted waiver of jury trial as a matter of course were Massachusetts and Maryland. The "first constitution" of Massachusetts—The Body of Liberties of 1641—contained as Liberty XXIX the following:

> "In all actions at law, it shall be the liberty of the plaintiff and defendant, by mutual consent, to choose

whether they will be tried by the Bench or by a Jury, unless it be where the law upon just reason has otherwise determined. The like liberty shall be granted to all persons in Criminal cases."

It should be noted that Liberty XXIX's language explicitly provided that the right to choose trial by judge alone was subject to change "where the law upon just reason has otherwise determined." Moreover, those drafting and administering the Liberty recognized that it was a departure from the English common law. Grinnell, To What Extent is the Right to Jury Trial Optional in Criminal Cases in Massachusetts? 8 Mass. L. Q. No. 5, 7, 23–25 (1923). Several cases can be cited, at least up until 1692, in which defendants in Massachusetts waived jury trial and were tried by the bench. See Grinnell, *supra,* at 27–29; Griswold, *supra,* at 661–664. However, from 1692 on, in light of increasing hostility to the Crown, the colonists of Massachusetts stressed their right to trial by jury, not their right to choose between alternate methods of trial. Instead of being a settled part of the jurisprudence of Massachusetts at the time of the Constitutional Convention, the ability to choose between judge and jury had become a forgotten option in Massachusetts:

"With the state of mind then existing among the colonists, presumably nobody bothered about this question of any one's wanting to waive a jury. The General Court was then concerned with the question of a man's right to a jury *when he asked for it,* which they thought in danger. The 'Body of Liberties' never having been printed and the nineteen original official manuscript copies having doubtless been lost or forgotten, the 'bar' (which did not begin to develop until the beginning of the 18th century) and

the 18th century people, probably grew up without any general knowledge of the expressly optional character of the right to a jury established as a 'fundamental' by the common law of Massachusetts in the colonial period." [4]

It appears that from the early days of Maryland's colonization minor cases were tried by judges sitting alone. Bond, The Maryland Practice of Trying Criminal Cases by Judges Alone, Without Juries, 11 A. B. A. J. 699, 700 (1925). But the defendant who submitted his case to the judge was not considered on a par with the defendant who chose to have a jury hear his case, as is evidenced by a Maryland statute of 1793 which provided that submission to a judge would be considered an admission of crime (analogous to the "implied confession" of minor offenses under English common law) at least insofar as to render the person submitting his case to a judge liable for the costs of prosecution. In 1809, Maryland declared by statute that waiver of jury trial was to be encouraged and the willing defendant was to suffer no increased liability for so doing. It was not until 1823, however, that major cases began also to be submitted to judges alone, and the first major case so submitted caused some surprise and sharp comment in Maryland legal circles. See Bond, *supra*, at 701.

Other possible examples of optional jury trial procedures can be cited in colonial New Hampshire, Vermont, Connecticut, New Jersey and Pennsylvania.[5] See Gris-

---

[4] Grinnell, *supra*, at 33.

[5] The Pennsylvania case of *Proprietor* v. *Wilkins*, Pennypacker's Pennsylvania Colonial Cases 88 (1892), decided in 1685–1686, is of interest in that the court tried a fornication case without a jury over the objection of the prosecution. The punishment involved in the case was a 10-pound fine. The case is, therefore, little authority for the proposition that defendants had the right to waive jury trials in all cases.

wold, *supra,* at 664–667. The most that can be said for these examples is that they are evidence that the colonists believed it was possible to try criminal defendants without a jury. They in no way show that there was any general recognition of a defendant's right to be tried by the court instead of by a jury. Indeed, if there had been recognition of such a right, it would be difficult to understand why Article III and the Sixth Amendment were not drafted in terms which recognized an option.

*The Constitution and Its Judicial Interpretation.* The proceedings at the Constitutional Convention give little insight into what was meant by the direction in Art. III, § 2, that the "Trial of all Crimes . . . shall be by jury." The clause was clearly intended to protect the accused from oppression by the Government, see III Farrand, Records of the Federal Convention 101 (James Wilson), 221–222 (Luther Martin) (1911); but, since the practice of permitting defendants a choice as to the mode of trial was not widespread, it is not surprising that some of the framers apparently believed that the Constitution designated trial by jury as the exclusive method of determining guilt, see The Federalist, No. 83 (Alexander Hamilton) (Cooke ed. 1961); IV Elliot's Debates 145, 171 (James Iredell) (2d ed. 1876); III Elliot's Debates 521 (Edmund Pendleton) (2d ed. 1876).

In no known federal criminal case in the period immediately following the adoption of the Constitution did a defendant claim that he had the right to insist upon a trial without a jury. Indeed, in *United States* v. *Gibert,* 25 Fed. Cas. 1287 (No. 15204) (C. C. D. Mass. 1834), Mr. Justice Story, while sitting on circuit, indicated his view that the Constitution made trial by jury the only permissible method of trial. Similar views were expressed by other federal judges. See *Ex parte McClusky,* 40 F. 71, 74–75 (C. C. D. Ark. 1889) (by implication); *United*

32

*States* v. *Taylor*, 11 F. 470, 471 (C. C. D. Kan. 1882) (dictum).[6]

Although not necessary to the holding in the case, in ·*Thompson* v. *Utah*, 170 U. S. 343, this Court also expressed a view that the Constitution made jury trial the exclusive method of determining guilt in all federal criminal cases. However, in *Schick* v. *United States*, 195 U. S. 65, the Court decided there was no constitutional requirement that petty offenses be tried by jury. These two decisions were construed by the lower federal courts as establishing a rule that in all but petty offenses jury trial was a constitutional imperative. See *Coates* v. *United States*, 290 F. 134 (C. A. 4th Cir. 1923); *Blair* v. *United States*, 241 F. 217, 230 (C. A. 9th Cir. 1917); *Frank* v. *United States*, 192 F. 864, 867–868 (C. A. 6th

---

[6] In construing their own constitutions, which generally had clauses designed to preserve the common-law right to trial by jury, the state courts took a similarly limited view of the ability of a defendant to waive jury trial. Some state courts ruled that in the absence of a statute there could be no waiver of jury trial. See, *e. g., Wilson* v. *State*, 16 Ark. 601 (1855); *State* v. *Maine*, 27 Conn. 281 (1858); *People* v. *Smith*, 9 Mich. 193 (1861). Several other courts determined that the State could by statute prohibit waiver of jury trials. See, *e. g., Arnold* v. *Nebraska*, 38 Neb. 752, 57 N. W. 378 (1894); *In re McQuown*, 19 Okla. 347, 91 P. 689 (1907); *State* v. *Battey*, 32 R. I. 475, 80 A. 10 (1911); *State* v. *Hirsch*, 91 Vt. 330, 100 A. 877 (1917); *Mays* v. *Commonwealth*, 82 Va. 550 (1886). Some state courts interpreted their constitutions to say that under no circumstances could waiver be allowed. See, *e. g., State* v. *Holt*, 90 N. C. 749 (1884); *Williams* v. *State*, 12 Ohio St. 622 (1861). Several courts, of course, held that waiver of a jury was permissible, even in the absence of enabling legislation. See, *e. g., State ex rel. Warner* v. *Baer*, 103 Ohio St. 585, 134 N. E. 786 (1921) (overruling *Williams* v. *State, supra*); *Ex parte King*, 42 Okla. Cr. 46, 274 P. 682 (Okla. Crim. App. 1929). In *Hallinger* v. *Davis*, 146 U. S. 314, this Court held that a state statute permitting waiver of jury trial in criminal cases did not violate the Due Process Clause of the Fourteenth Amendment.

Cir. 1911) (dictum); *Low* v. *United States,* 169 F. 86 (C. A. 6th Cir. 1909); *Dickinson* v. *United States,* 159 F. 801 (C. A. 1st Cir. 1908), cert. denied, 213 U. S. 92.

The issue whether a defendant could waive a jury trial in federal criminal cases was finally presented to this Court in *Patton* v. *United States,* 281 U. S. 276. The *Patton* case came before the Court on a certified question from the Eighth Circuit. The wording of the question, *id.,* at 287, is significant:

"After the commencement of a trial in a Federal Court before a jury of twelve men upon an indictment charging a crime, punishment for which may involve a penitentiary sentence, if one juror becomes incapacitated and unable to further proceed with his work as a juror, can defendant or defendants and the Government through its official representative in charge of the case consent to the trial proceeding to a finality with eleven jurors, and can defendant or defendants thus waive the right to a trial and verdict by a constitutional jury of twelve men?"

The question explicitly stated that the Government had agreed with the defendant that his trial should proceed with 11 jurors. The case did not involve trial before a judge alone, but the Court believed that trial before 11 jurors was as foreign to the common law as was trial before a judge alone, and therefore both forms of waiver "in substance amount[ed] to the same thing." *Id.,* at 290. The Court examined Art. III, § 2, and the Sixth Amendment and concluded that a jury trial was a right which the accused might "forego at his election." *Id.,* at 298. The Court also spoke of jury trial as a "privilege," not an "imperative requirement," *ibid.,* and remarked that jury trial was principally for the benefit of the accused, *id.,* at 312. Nevertheless, the Court was conscious of the precise question that was presented by the Eighth Circuit, and concluded its opinion, *id.,* at 312–

34

313, with carefully chosen language that dispelled any notion that the defendant had an absolute right to demand trial before a judge sitting alone:

"Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity."

In *Adams* v. *United States ex rel. McCann*, 317 U. S. 269, 277–278, this Court reaffirmed the position taken in *Patton* that "one charged with a serious federal crime may dispense with his Constitutional right to jury trial, where this action is taken with his express, intelligent consent, where the Government also consents, and where such action is approved by the responsible judgment of the trial court."

II.

Thus, there is no federally recognized right to a criminal trial before a judge sitting alone, but a defendant can, as was held in *Patton*, in some instances waive his right to a trial by jury. The question remains whether the effectiveness of this waiver can be conditioned upon the consent of the prosecuting attorney and the trial judge.

The ability to waive a constitutional right does not ordinarily carry with it the right to insist upon the oppo-

site of that right. For example, although a defendant can, under some circumstances, waive his constitutional right to a public trial, he has no absolute right to compel a private trial, see *United States* v. *Kobli,* 172 F. 2d 919, 924 (C. A. 3d Cir. 1949) (by implication); although he can waive his right to be tried in the State and district where the crime was committed, he cannot in all cases compel transfer of the case to another district, see *Platt* v. *Minnesota Mining & Mfg. Co.,* 376 U. S. 240, 245; *Kersten* v. *United States,* 161 F. 2d 337, 339 (C. A. 10th Cir. 1947), cert. denied, 331 U. S. 851; and although he can waive his right to be confronted by the witnesses against him, it has never been seriously suggested that he can thereby compel the Government to try the case by stipulation. Moreover, it has long been accepted that the waiver of constitutional rights can be subjected to reasonable procedural regulations: Rule 7 (b) of the Federal Rules of Criminal Procedure sets forth the procedure to be followed for waiver of the right to be prosecuted by indictment; Rule 20 describes the procedure for waiver of the right to be tried in the district in which an indictment or information is pending against a defendant; and Rule 44 deals with the waiver of the right to counsel.

Trial by jury has been established by the Constitution as the "normal and . . . preferable mode of disposing of issues of fact in criminal cases." *Patton* v. *United States,* 281 U. S. 276, 312. As with any mode that might be devised to determine guilt, trial by jury has its weaknesses and the potential for misuse. However, the mode itself has been surrounded with safeguards to make it as fair as possible—for example, venue can be changed when there is a well-grounded fear of jury prejudice, Rule 21 (a) of the Federal Rules of Criminal Procedure, and prospective jurors are subject to *voir dire* examination, to challenge for cause, and to peremptory challenge, Rule 24 (a) and (b).

In light of the Constitution's emphasis on jury trial, we find it difficult to understand how the petitioner can submit the bald proposition that to compel a defendant in a criminal case to undergo a jury trial against his will is contrary to his right to a fair trial or to due process. A defendant's only constitutional right concerning the method of trial is to an impartial trial by jury. We find no constitutional impediment to conditioning a waiver of this right on the consent of the prosecuting attorney and the trial judge when, if either refuses to consent, the result is simply that the defendant is subject to an impartial trial by jury—the very thing that the Constitution guarantees him. The Constitution recognizes an adversary system as the proper method of determining guilt, and the Government, as a litigant, has a legitimate interest in seeing that cases in which it believes a conviction is warranted are tried before the tribunal which the Constitution regards as most likely to produce a fair result. This recognition of the Government's interest as a litigant has an analogy in Rule 24 (b) of the federal rules, which permits the Government to challenge jurors peremptorily.

We are aware that the States have adopted a variety of procedures relating to the waiver of jury trials in state criminal cases. Some have made waiver contingent on approval by the prosecutor, *e. g.,* California (Cal. Const. Art. I, § 7), Indiana (Ind. Ann. Stat. § 9–1803 (1956 Repl. vol.), *Alldredge* v. *Indiana,* 239 Ind. 256, 156 N. E. 2d 888 (1959)), and Virginia (Va. Const. § 8, Va. Code Ann. § 19.1–192 (1950 Repl. vol.), *Boaze* v. *Commonwealth,* 165 Va. 786, 183 S. E. 263 (1936)). Others, while not giving the prosecutor a voice, have made court approval a prerequisite for waiver, *e. g.,* Georgia (Ga. Code Ann. § 102–106 (1955), *Palmer* v. *State,* 195 Ga. 661, 25 S. E. 2d 295 (1943)), and Washington (Wash. Rev. Code § 10.01.060 (1963 Supp.)). Still others have provided

that the question of waiver is a matter solely for the defendant's informed decision, *e. g.,* Connecticut (Conn. Gen. Stat. Rev. § 54–82 (1958)), and Illinois (Ill. Ann. Stat. c. 38, § 103–6 (Smith-Hurd ed. 1964), *Illinois* v. *Spegal,* 5 Ill. 2d 211, 125 N. E. 2d 468 (1955)). However, the framers of the federal rules were aware of possible alternatives when they recommended the present rule to this Court, see Orfield, Trial by Jury in Federal Criminal Procedure, 1962 Duke L. J. 29, 69–72; this Court promulgated the rule as recommended; and Congress can be deemed to have adopted it, 18 U. S. C. § 3771 (1958 ed.).

In upholding the validity of Rule 23 (a), we reiterate the sentiment expressed in *Berger* v. *United States,* 295 U. S. 78, 88, that the government attorney in a criminal prosecution is not an ordinary party to a controversy, but a "servant of the law" with a "twofold aim . . . that guilt shall not escape or innocence suffer." It was in light of this concept of the role of prosecutor that Rule 23 (a) was framed, and we are confident that it is in this light that it will continue to be invoked by government attorneys. Because of this confidence in the integrity of the federal prosecutor, Rule 23 (a) does not require that the Government articulate its reasons for demanding a jury trial at the time it refuses to consent to a defendant's proffered waiver. Nor should we assume that federal prosecutors would demand a jury trial for an ignoble purpose. We need not determine in this case whether there might be some circumstances where a defendant's reasons for wanting to be tried by a judge alone are so compelling that the Government's insistence on trial by jury would result in the denial to a defendant of an impartial trial. Petitioner argues that there might arise situations where "passion, prejudice . . . public feeling" [7] or some other

---

[7] Petitioner's Brief, p. 24.

38

factor may render impossible or unlikely an impartial trial by jury. However, since petitioner gave no reason for wanting to forgo jury trial other than to save time, this is not such a case, and petitioner does not claim that it is.

Petitioner has also raised questions involving the instructions to the jury and alleged misconduct by the prosecuting attorney. We have examined the record and find that the jury was adequately instructed. In any event, no timely objection was made as required by Rule 30 of the Federal Rules of Criminal Procedure and, in the absence of plain error, the Court of Appeals correctly affirmed the judgment of the trial court. Similarly without merit are petitioner's specifications of misconduct by the prosecuting attorney during the trial, since the record reveals that the misconduct, if any, was neither purposeful nor flagrant, and the trial court's admonitions to the jury seem to have been well designed to cure whatever prejudicial impact some of the prosecutor's remarks may have had in this case.

The judgment of the Court of Appeals is

*Affirmed.*