**Bert J. FLOOD Sr., Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–11103.

Court of Appeals of Alaska.

June 28, 2013.

Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: MANNHEIMER, Chief Judge, ALLARD, Judge, and COATS, Senior Judge.*

*OPINION*

Senior Judge COATS.

Bert J. Flood Sr. was convicted of sexual abuse of a minor in the first degree, sexual abuse of a minor in the second degree, and incest, for engaging in sexual penetration with S.A., his 15–year–old daughter. He raises two arguments on appeal.

Flood, who was in custody, asked to be absent from his trial. The State opposed the request. The trial judge denied the request and ordered Flood transported to Kotzebue for trial. Flood argues that this was error. But we uphold the trial judge's decision.

During Flood's trial, the doctor who performed the sexual assault examination on S.A. testified that S.A. stated during the

---

* Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

examination that Flood had improperly touched her when she was five or six years old. Flood did not object to this statement at trial. But on appeal Flood argues that the statement should have been excluded under Evidence Rules 404 and 403 as unduly prejudicial evidence of prior acts, and that the failure to exclude the statement was plain error. We do not find plain error.

### Factual and procedural background

S.A. testified that she was in Kotzebue for a wedding for a few days around December 11, 2006, although at the time she lived with her mother in Noatak. She remembered drinking some alcohol. She went to the library with some friends. She returned to her father's place a couple hours later.

S.A. testified that she did not remember much more from that night, since she was intoxicated. Between blackouts, she remembered her father being on top of her. Her pants and underwear were off, and she felt him inside her. The next thing she remembered was waking up in the hospital.

Some of S.A.'s friends found her a little bit after midnight, drunk and lying in the snow. She was fully clothed, but her jacket was unzipped. The police arrived and S.A. was taken to the hospital.

Tanya Hallgren was a counselor working in the emergency room. She testified that S.A. told her that Flood had sexually abused her. Dr. John Melville performed a Sexual Assault Response Team exam on S.A. and at trial was qualified as an expert in the area of forensic examinations for sexual assault victims. The prosecutor asked Dr. Melville, "[O]n December 12th of 2006 when you saw [S.A.], what were the statements that she made to you that were necessary for your medical treatment with regard to what happened to her?" Dr. Melville responded:

> So she reported to me that (indiscernible)—from approximately 4:00 to 6:00 . . . the previous day her father had given her about half a jug of R & R, which is a common form of alcohol up here, and that

she had consumed (indiscernible) mixing it with Pepsi. At some time that evening she reports that her father, Mr. Bert Flood, quote, tried to touch my bottom. She really was not clear on a lot of other details. She could not recall if she was or was not wearing pants at that time. She reported no other recollection of the entire evening. *She did report that her father had also "touched me when I was five or six". And in the context of a sexual assault exam [or] interview, "touched me" universally means "touched me inappropriately".*[1]

Dr. Melville testified that he found bruising on S.A.'s legs, evidence of bodily fluids on her lips, cheek, and thighs, and that her hymen was torn. Samples were sent to the forensic lab, and spermatozoa were detected on the vaginal swab. The police obtained a warrant to take two swabs from Flood, one from his mouth and one from his penis. DNA from S.A.'s vaginal swab was consistent with Flood's DNA.

Flood was indicted on three counts: first-degree sexual abuse of a minor for engaging in sexual penetration with S.A. as her parent[2]; second-degree sexual abuse of a minor for being 17 years of age or older and engaging in sexual penetration with S.A., a person who was 13, 14, or 15 years old and at least four years younger than himself[3]; and incest for being 18 years of age or older and engaging in sexual penetration with S.A., a person who was related as a descendant of the whole or half blood.[4]

Flood was in custody pending trial. Prior to trial, Flood's attorney informed the court that Flood did not want to be present for trial and wanted to appear telephonically. The State objected. The trial judge concluded that under Criminal Rules 38 and 38.1 he had discretion to allow Flood to waive his right to appear, but he nevertheless declined to grant Flood's request. The judge concluded (for reasons that we will explain) that

---

1. Emphasis supplied.

2. AS 11.41.434(a)(2).

3. AS 11.41.436(a)(1).

4. AS 11.41.450(a)(1).

Flood should be physically present at his trial.

Flood renewed his request before trial. He stated he did not want to participate in the trial at all, even telephonically. The judge denied this request as well.

At the conclusion of the trial, the jury found Flood guilty of all three counts. Flood now appeals.

*The trial judge did not err when he refused Flood's request to be absent from his trial*

■ When Flood made his request to be absent from his trial, the prosecutor raised three major concerns. First, the prosecutor expected that S.A. would make an in-court identification of Flood, for which Flood needed to be present. The prosecutor also contended that, during jury voir dire, there might be jurors who were acquainted with Flood and would recognize his features even if they did not know his name. Finally, the prosecutor contended that, if Flood were absent, Flood would have difficulty communicating with his attorney.

The trial judge concluded that he had discretion under Criminal Rules 38 and 38.1 to grant or deny Flood's request. He concluded that it was important for the complaining witness to be able make an in-court identification of Flood. He also concluded that it was important for potential jurors to have the opportunity to see Flood because some potential jurors might "recognize Mr. Flood by face but not … know him by name." Finally, the judge was concerned about Flood making later claims of ineffective assistance of counsel because Flood would not have the ability to consult with his attorney during jury selection and trial. He found that Flood's request was an attempt to manipulate the system.

We conclude that the trial judge did not abuse his discretion in denying Flood's request to be absent from his trial. Criminal Rule 38(a) provides:

(a) **Presence: Required.** The defendant shall be present at the arraignment, at the preliminary hearing, at the time of plea, at the omnibus hearing, and at every stage of the trial, including the impaneling of the jury and return of the verdict, and at the imposition of sentence, except as otherwise provided in this rule.

Criminal Rule 38(b) and (c) set out circumstances where the defendant's continued presence is not required. Under Criminal Rule 38(b), the defendant's presence is not required if he is "absent voluntarily after the trial has commenced" or if he "[e]ngages in conduct which is such as to justify exclusion from the courtroom." But these exceptions are designed to prevent a defendant from sabotaging the trial by voluntarily refusing to attend the trial or by engaging in disruptive behavior after the trial has begun in his presence.

Criminal Rule 38(c) gives the court the authority to allow a defendant not to be present in cases where the potential punishment is less than one year of imprisonment.

Criminal Rule 38 states that the defendant's presence is required for trial and provides limited exceptions which do not apply to Flood's case. The rule could plausibly be read to require the defendant's presence unless one of the exceptions applied. For purposes of this case, however, we assume that the superior court had discretion to authorize Flood to be absent from his trial. But even if the superior court had this discretion, the court gave substantial reasons for denying Flood's request. We accordingly conclude that the superior court did not err in its ruling.

■ On appeal, Flood presents a new argument that he did not raise in the trial court. Flood points out that a defendant has a constitutional right to be present at his trial.[5] He argues that a defendant may waive a constitutional right.[6] He therefore

---

**5.** U.S. Const., amend. VI, XIV; Alaska Const., art. I, §§ 7, 11; *State v. Hannagan*, 559 P.2d 1059, 1063 (Alaska 1977).

**6.** *See Campbell v. Wood*, 18 F.3d 662, 671 (9th Cir.1994) (en banc) ("A defendant's rights under

the Constitution may be waived, provided such waiver is voluntary, knowing, and intelligent.").

argues that the trial court "has no discretion to reject a defendant's knowing, intelligent, and voluntary waiver" of his constitutional right to be present at his trial.

But in *Singer v. United States,* 380 U.S. 24, 34–35, 85 S.Ct. 783, 790, 13 L.Ed.2d 630 (1965), the United States Supreme Court stated that "[t]he ability to waive a constitutional right does not ordinarily carry with it the right to insist upon the opposite of that right." The *Singer* Court held that although defendants have the right to a jury trial, they have no right to a non-jury trial, and a jury trial waiver can be conditioned upon the consent of the prosecutor and the trial judge.[7] If either the prosecutor or judge does not consent to the waiver, then "the result is simply that the defendant is subject to an impartial trial by jury—the very thing that the Constitution guarantees him."[8]

In advancing his claim, Flood primarily relies on two cases: *Campbell v. Wood,*[9] a Ninth Circuit case, and *Peede v. State,*[10] a Florida case. In both cases the defendant requested to be absent for a portion of his trial, and the trial judge granted the request. But on appeal each defendant argued that the trial judge should not have granted the request. The appellate court upheld the trial judge's decision. Both of these cases appear to only support the proposition that, if the defendant is responsible for the fact that he is not present for a portion of his trial, he cannot prevail by reversing his position and claiming that the trial court erred in granting his request to be absent. These cases do not stand for the proposition that a court is required to grant a defendant's request to be absent from his trial. Rather, these cases seem to support the trial court's concern that, if the court granted Flood's request to be absent from his trial, Flood would claim on appeal that his right to be present at his trial was violated or that his defense was prejudiced because he was not present. We conclude that Flood's argument that he had a constitutional right to waive his presence at the trial has no merit.

*Why we conclude that the trial judge did not commit plain error by allowing Dr. Melville to testify about S.A.'s statement that Flood had abused her when she was a young child*

■ We have previously set out Dr. Melville's testimony that, when he conducted the sexual assault examination on 15–year–old S.A., S.A. stated that Flood had abused her when she was five or six years old. Flood did not object to this statement at trial but now argues on appeal that admission of this statement constituted plain error.

Flood argues that Dr. Melville's testimony that S.A. told him Flood had touched her was character evidence that was not admissible under Evidence Rule 404(b)(1) or (b)(2).

Under Evidence Rule 404(b)(2), in a prosecution for sexual abuse of a minor, evidence of another act toward the same child is admissible if the prior act occurred within the 10 years preceding the offense charged, and the prior act was similar to the offense charged. Flood argues that his prior offense was not similar to the charged offense. Specifically, he argues that the prior offense was not similar because there was no indication that alcohol was involved in the prior incident, and because S.A. was so young at the time of the prior incident.

The legislature enacted Evidence Rule 404(b)(2) in order "to make it easier for the prosecution to introduce evidence of a defendant's other acts of sexual or physical abuse."[11] But even before the legislature enacted this rule, case law established that prior sexual abuse against the same victim would generally be admissible under what is now Evidence Rule 404(b)(1) because it tended to establish the defendant's sexual attraction toward the victim.[12] Therefore Dr. Mel-

---

7. *Singer,* 380 U.S. at 36, 85 S.Ct. at 790.

8. *Id.*

9. 18 F.3d 662 (9th Cir.1994) (en banc).

10. 474 So.2d 808 (Fla.1985).

11. *Peratrovich v. State,* 903 P.2d 1071, 1074 (Alaska App.1995).

12. *Id.*

ville's testimony that S.A. told him that Flood had abused her previously when she was five or six years old does not constitute plain error and was not overly prejudicial.

*Conclusion*

The judgment of the superior court is AF-FIRMED.